IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RONNIE LOVE,                            )
                                        )
          Petitioner,                   )
                                        )
     v.                                 )   1:07CV598
                                        )
THEODIS BECK, Secretary of the          )
Department of Correction,               )
                                        )
          Respondent.                   )

**RECOMMENDATION OF MAGISTRATE JUDGE ELIASON**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On December 16, 2004, Petitioner was convicted after trial by jury in Alamance County Superior Court of four counts of first-degree kidnaping, one count of robbery with a firearm, and one count of breaking and entering. He was sentenced to four consecutive terms of 145-183 months and one consecutive term of 129-164 months imprisonment in cases 04 CRS 54984, 54989, and 54990. Petitioner appealed his conviction, and the North Carolina Court of Appeals issued a published opinion finding no error on June 6, 2006. See State v. Love, 177 N.C. App. 614, 630 S.E.2d 234 (2006). The North Carolina Supreme Court denied Petitioner's subsequent petition for certiorari on August 16, 2006. Petitioner next sought collateral review in Alamance County Superior Court, where he filed a pro se motion for appropriate relief ("MAR") on May 21, 2007. After that court summarily denied his motion three days later, Petitioner filed the pro se federal habeas petition now before the Court.

**Facts**

On June 2, 2004, the Peterson family, consisting of Mr. and Mrs. Peterson and their two sons, Matt and Grant, were the victims of a home invasion and robbery by four men. The men bound and gagged the entire family with duct tape and forced Mr. Peterson to relinquish hundreds of dollars in cash and to open two safes at gunpoint. State v. Love, 177 N.C. App. at 619, 630 S.E.2d at 238.

> Mr. Petersen was then returned to the couch where his hands and ankles were re-bound, his arms were taped to his chest, and tape was placed around his face and mouth. The intruders directed each of the members of the Petersen family to sit in dining room chairs where they proceeded to bind each person directly to the chair. After binding each person to their chair, the intruders placed the chairs of Mr. and Mrs. Petersen back to back as well as the chairs of Matt and Grant back to back and bound the chairs together and then placed a plastic bag over Matt's head. One of the intruders asked Mr. Petersen for the keys to his van which Mr. Petersen gave him and the intruders proceeded to remove items from the Petersen home. Before leaving, the armed men rechecked the bindings and further wrapped duct tape around all four dining room chairs several times in order to bind the entire family together. One of the intruders remained in the home with the family pointing a gun at them until the Petersen's van was ready to leave, and as he left the home he stated, "we'll be back."
>
> Once the intruders were gone, Mr. Petersen was able to chew through his bindings until he could break them loose allowing him to release himself and the rest of his family members. It was determined that the intruders had stolen a shotgun, cash, Mrs. Petersen's jewelry, a video recorder, cell phone, digital camera, memory card, surround sound system, and other items. On 5 June 2004, defendant Ronnie Love gave officers at the Alamance County Sheriff's Department a statement which implicated himself, defendants Tino and Toby Love, and Willie Moore in the Petersen home invasion. A search was thereafter conducted of the property where defendant Tino Love was residing which revealed wig pieces, face cream, a wig, blue and white bandana, and other miscellaneous items. After the search was conducted, Tino Love was taken to the Alamance County Sheriff's Department where he gave a

taped statement implicating defendants Ronnie and Toby
Love and Willie Moore in the home invasion. On 7 June
2004, defendant Toby Love gave a statement to police
officers which implicated Willie Moore and defendants
Ronnie and Tino Love in the Petersen home invasion.

One of defendants' girlfriends turned over surround sound
speakers, video tape, and film from a camera to police.
Subsequently her house was searched revealing assorted
gold and silver jewelry, two-way radios, and two
handguns. During trial the seized property was
identified and admitted into evidence showing that some
of the property bore the initials of Mr. Petersen.
Certain property and jewelry were identified by Mr. and
Mrs. Petersen as items that were taken from their home.

Id. at 619-620, 630 S.E.2d at 238-239.

An Alamance County grand jury indicted defendants on four
counts of first-degree kidnaping, assault on a child
under the age of 12, robbery with a dangerous weapon,
breaking and entering, larceny, possession of stolen
goods, and certain aggravating factors. . . . After
granting the motion for joinder of all issues and all
defendants, the trial judge addressed the issue of
redaction of each defendants' statement. In doing such,
the judge went line by line through each defendant's
statement and informed all parties what should be deleted
allowing them an opportunity to object after each
suggested redaction, resulting in a redacted version of
all three defendants' statements.

Before jury selection ensued, the trial judge informed
defendants of the procedure for voir dire after the State
passed the panel to defendants as follows:

> The State passes 12 to you. You question.
> You excuse any, it goes back to the State.
> State fills up those seats. Passes 12 to you.
> You excuse any, it goes back to the State.
> Where there's 12 that you've passed and the
> State has passed, then it goes to Ms. Harris.
> We'll keep doing that until we're done and
> we're going to have to keep up with it because
> I probably will have some trouble remembering
> how many each person gets to question.

Id. at 617-618, 630 S.E.2d at 237.

At the conclusion of the evidence, defendants made a
motion to submit the charge of second-degree kidnaping to

-3-

> the jury on the basis that the victims were released into
> a safe place.  The motion to submit the lesser included
> offense to the jury was denied by the trial judge citing
> the Webster dictionary definition of release as "'one, to
> set free from restraint, confinement for servitude; to
> let go.'"  The jury returned guilty verdicts as to all
> defendants on the charges of four counts of first-degree
> kidnaping, robbery with a firearm, and felonious breaking
> or entering.

Id. at 619-620, 630 S.E.2d at 238-239.

### Petitioner's Claims

In this Court, Petitioner raises four grounds for relief. He contends that the trial court erred in (1) imposing a jury selection procedure which deviated from mandatory statutory guidelines and (2) failing to submit the lesser included offense of second-degree kidnaping to the jury. He also claims that the trial judge erred in (3) abandoning her role of impartiality in redacting the co-defendants' statements for introduction at trial, and in (4) failing to recuse herself based on her bias against a co-defendant's counsel. Respondent moves for summary judgment on all of Petitioner's claims.

### Procedural Bar

Respondent first argues that all of Petitioner's claims are procedurally barred. In order to receive habeas relief on any claim, a petitioner must first exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). The rationale for this requirement is axiomatic.

> Because the exhaustion doctrine is designed to give the
> state courts a full and fair opportunity to resolve
> federal constitutional claims before those claims are
> presented to the federal courts . . . state prisoners
> must give the state courts one full opportunity to

> resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). In a two-tiered appellate system like North Carolina's, "one complete round" includes not only direct appeal to the State's intermediate appellate court, but also the opportunity to petition for discretionary review in the North Carolina Supreme Court. See id. Claims not raised in a petition to the state's highest court are non-exhausted and therefore procedurally barred from federal habeas review. Id. Moreover, failure to exhaust state law remedies will result in the claims being procedurally barred from federal review if, upon return to the state courts, those courts would find that the claims are procedurally barred. Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998)(citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)). North Carolina General Statute § 15A-1419 imposes just such a mandatory procedural bar for claims that could have been presented on appeal or in a prior motion for appropriate relief. Rose v. Lee, 252 F.3d 676, 683 (4th Cir. 2001).

In the present case, the North Carolina Court of Appeals addressed all four of Petitioner's habeas claims on direct appeal. However, Petitioner's subsequent petition for discretionary review only sought review of his first two claims, i.e., those relating to jury selection and instruction. Further, Petitioner's MAR only challenged the trial court's redaction of statements, and the denial of that motion was never pursued in the appellate courts. In short, Petitioner has not exhausted any of his claims.

At one time, <u>Rose</u> would have required the Court to dismiss all of Petitioner's claims for non-exhaustion. However, the Antiterrorism and Effective Death Penalty Act of 1996 amended 28 U.S.C. § 2254 to allow federal courts to entertain non-exhausted claims for the purpose of dismissing them on the merits. 28 U.S.C. § 2254(b)(2). Although none of Petitioner's claims have been fully exhausted, the Court also finds that none of the claims have merit or present a serious issue for a state court to review. Thus, the Court chooses to exercise this option and review Petitioner's claims on their merits.

**Standard of Review**

If the Court finds that Petitioner's claims were adjudicated by the state courts on their merits, it must then apply 28 U.S.C. § 2254(d)'s highly deferential standard of review to Petitioner's claims. Under that standard, habeas relief cannot be granted in cases where a state court has considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as set out by the United States Supreme Court or the state court decision was based on an unreasonable determination of the facts. A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. <u>Williams v. Taylor</u>, 529 U.S. 362, 405 (2000). A state decision

"involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 413. "Unreasonable" is not the same as "incorrect" or "erroneous," and the reasonableness of the state court's decision must be judged from an objective, rather than subjective, standpoint. Id. at 409-410. A holding is not reasonable simply because precedent written by one of the Nation's jurists agrees with it. Id. As for questions of fact, state court findings of fact are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Here, despite Petitioner's failure to exhaust, the state courts have addressed and denied each of Petitioner's claims on their merits. Therefore, the strict standards for review set out above apply to the Court's analysis.

## Discussion

As detailed above, the petition in this case lists four separate claims for relief. While each of these claims is based on a distinct act or omission by the trial court, all but the third claim allege, at their core, that the trial judge failed to follow state law. This commonality is pivotal to Petitioner's case, because habeas review is limited to claims arising under the Constitution and laws of the United States. Where state law issues are involved, "[i]t is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented." Grundler v. State of North

-7-

Carolina, 283 F.2d 798, 802 (4th Cir. 1960). This holding was more recently reaffirmed by the Fourth Circuit in Spencer v. Murray, 5 F.3d 758, 762 (4th Cir. 1993). Therefore, Petitioner is only entitled to relief for his first, second, and fourth claims if the trial judge's decisions rose to the level of fundamental unfairness. Petitioner's third claim, which alleges a violation of the Confrontation Clause, will be addressed separately.

**Claim One**

Petitioner first contends that the trial judge erred in imposing a jury selection procedure which deviated from the mandatory statutory guidelines under N.C.G.S. § 15A-1214. On direct appeal, the North Carolina Court of Appeals acknowledged that the trial court did, in fact, fail to follow the mandatory guidelines when selecting the jury for Petitioner's trial. Love, 177 N.C. App. at 623, 630 S.E.2d at 240. It also noted, however, that "[t]he purpose of underlying jury selection is to ensure the impanelment of an 'impartial and unbiased jury.'" Id. at 623, 630 S.E.2d at 241 (citing State v. Garcia, 358 N.C. 382, 407, 597 S.E.2d 724, 743 (2004)). Hence, "[d]efendants must show not only that a statutory violation occurred, but also that they were prejudiced by this violation." Love, 177 N.C. App. at 623, 630 S.E.2d at 241 (citations omitted).

In the instant case, the court of appeals found that Petitioner and his co-defendants failed to "show jury bias, the inability to question prospective jurors, inability to assert peremptory challenges, []or any other defect which had the

-8-

likelihood to affect the outcome of the trial." Id. Further, it noted that none of the defendants used all of their peremptory challenges or made challenges for cause during jury selection. Id. In such instances, defendants may not claim that they were "forced to accept an undesirable juror," id. (citing State v. Lawrence, 352 N.C. 1, 13, 530 S.E.2d 807, 815 (2000)).

Petitioner fails to identify any federal constitutional right which was violated by jury selection. Nor has he shown that the state court decision was fundamentally unfair or infringed specific constitutional protections. The State remains free to interpret its own laws and has found that state law was not violated. This Court has no authority to second-guess or overrule the state courts on issues of the correct interpretation of state law. Thus, Petitioner's first claim merits summary judgment.

**Claim Two**

Petitioner next challenges the trial judge's decision not to instruct the jury on the lesser included charge of second-degree kidnaping. North Carolina law provides that a trial court must instruct on a lesser included offense "when, and only when, there is evidence from which the jury could find that defendant committed the lesser included offense." State v. Boykin, 310 N.C. 118, 121, 310 S.E.2d 315, 317 (1984). Under the applicable statute in this case, N.C.G.S. § 14-39(b), kidnaping is in the second degree when the victim was "released in a safe place by the defendant and had not been seriously injured or sexually assaulted." Petitioner

claims that his crime met this definition because his victims were left bound and gagged in a safe place, i.e., their home.

Unfortunately for Petitioner, the North Carolina courts have unequivocally interpreted section 14-39 as requiring "some willful action on the part of the defendant to ensure that his victim is released in a safe place." State v. Raynor, 128 N.C. App. 244, 251, 495 S.E.2d 176, 180 (1998)(citing State v. Jerrett, 309 N.C. 239, 262, 307 S.E.2d 339, 351 (1983)). Further, the courts have specifically held that a kidnaping victim who happens to escape despite a defendant's efforts to restrain him cannot be considered "released" under the statute. Raynor, supra. This rule is clearly applicable to the present case, where the Petersons were left heavily bound with duct tape and told that their kidnappers would return. Thus, Petitioner's claim is incorrect as a matter of state law. The trial court did not err in omitting a jury instruction regarding second-degree kidnaping. And, more to the point, Petitioner's constitutional rights were in no way infringed.

### Claim Four

Petitioner's fourth claim asserts that the trial judge was biased against co-defendant Toby Love's counsel, Craig Thompson, and that, in light of this bias, the judge erred in failing to recuse herself from the Loves' joint trial. Like claims one and two, this contention alleges a violation of state law. Principally, it relies on N.C.G.S. § 15A-1223(b), which provides that "[a] judge, on motion of the State or the defendant, must disqualify himself from presiding over a criminal trial or other

-10-

criminal proceeding if he is: (1) Prejudiced against the moving party or in favor of the adverse party." Petitioner's claim also invokes Canon 3(C) of the North Carolina Code of Judicial Conduct, which instructs judges to disqualify themselves from proceedings in which their "impartiality may reasonably be questioned." However, as the court of appeals correctly notes, the record fails to show that any of the defendants, including Petitioner, made any motion or objection at trial to preserve this issue for appeal. As such, that court declined to address the issue.

More importantly for purposes of habeas review, neither the record, the petition itself, nor any supporting documents provide evidence of judicial bias during Petitioner's trial. Petitioner and his co-defendants simply claim that their trial judge's inappropriate comments to Craig Thompson during an October 2003 trial deprived that defendant of a fair trial, and that the conviction stemming from that trial was later overturned.[1] (See Docket No. 6, Ex. 3); see also State v. Wright, 172 N.C. App. 464, 616 S.E.2d 366 (2005). Petitioner also argues that the trial judge has been further censured since his conviction. Notably, however, Petitioner fails to describe any bias during his own trial, and this failure is terminal to his claim. Wright, the very case Petitioner cites as demonstrating the bias of his trial judge

---

[1] Significantly, the decision to remand that case, State v. Wright, 172 N.C. App. 464, 616 S.E.2d 366 (2005), for a new trial had not yet been decided at the time of Petitioner's own trial in December 2004. Thus, the court of appeals' decision to overturn the trial judge for her behavior did not impact the latter trial.

toward Mr. Thompson, supports this conclusion. There, the court of appeals clearly indicates that, to constitute error, the actions of the trial court must prevent the defendant from receiving a fair trial. Id. at 469, 616 S.E.2d at 369. In particular, it recognized that, "'whether the accused was deprived of a fair trial by the challenged remarks of the trial judge must be determined by what was said and its probable effect upon the jury in light of all attendant circumstances, the burden of showing prejudice being upon the appellant.'" Id.(citations omitted). Here, Petitioner fails to challenge any specific remarks or behavior by the trial judge, let alone that such remarks had a "chilling effect on [his] trial process." Id. at 471, 616 S.E.2d at 370. Thus, Petitioner cannot show that he was the victim of fundamental unfairness, and his fourth claim, like his others, cannot succeed.

### Claim Three

Claim Three requires a somewhat different approach from the three previous ones discussed above. While all of those claims involved issues of state law, claim number three implicates Petitioner's constitutional rights under the Confrontation Clause. Specifically, Petitioner alleges that the trial judge abandoned her role of impartiality in redacting defendants' statements for introduction at trial. He claims that these statements were then introduced in violation of the Supreme Court's decision in Bruton v. United States, 391 U.S. 123 (1968), which prohibits the introduction of a nontestifying co-defendant's confession at a joint trial when that confession names the defendant as a

participant in the crime. However, his claim is wholly conclusory. He fails to identify any error. The claim could be dismissed for this reason alone.

In any event, as set forth in <u>State v. Love</u>, the North Carolina Court of Appeals reviewed Petitioner's contention on its merits and found no error. 177 N.C. App. at 624-625, 630 S.E.2d at 241-242. Therefore, the Court must now determine whether that decision was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

The trial transcript is key to this determination. It reveals a protracted, line-by-line discussion of each defendant's statement between the trial judge, the defense attorneys, and the prosecutor. There is no indication that the judge singlehandedly redacted the documents, spurned the attorneys' objections, or redacted the documents so as to prejudice Petitioner or his co-defendants in any way. In fact, there are a number of instances in which the trial judge struck additional portions of the statements at the attorneys' requests. (<u>See</u>, <u>e.g.</u>, Tr. at 222-223, 231, 234-235.) The judge also specifically mentions <u>Bruton</u> concerns as the justification for her proposed redactions. (<u>See</u> Tr. at 246, 248.) The court of appeals also found Petitioner failed to raise any objection at trial. Its conclusion that "the trial judge conducted the proceeding in an impartial manner and made every effort to ensure that defendants received a fair trial" is consistent with the law and the facts at hand. <u>Love</u>, 177 N.C. App. at 625, 630

S.E.2d at 242. Thus, Petitioner's claim must be denied, and this is especially so under 28 U.S.C. § 2254(d)'s highly deferential standard of review.

**IT IS THEREFORE RECOMMENDED** that Respondent's motion for summary judgment (docket no. 5) be granted, that the habeas petition (docket no. 2) be denied, and that Judgment be entered dismissing this action.

_____
**United States Magistrate Judge**

November 27, 2007